IN RE GUARDIANSHIP OF HELEN HOWLAND FLETCHER, INCOMPETENT. ELIZABETH ANN HOWELL, APPELLEE, V. HELEN HOWLAND FLETCHER, APPELLANT.

59 N. W. 2d 359

Filed June 19, 1953. No. 33239.

*Penelope H. Anderson* and *W. W. Wenstrand,* for appellant.

*Eugene D. O'Sullivan, Eugene D. O'Sullivan, Jr., David Lathrop,* and *Warren C. Schrempp,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This appeal is from the district court for Douglas County. It raises the question, when is the law of another state or territory of the United States so substantially similar to section 38-801, R. R. S. 1943, as to make that section available to a resident guardian and his ward of such other state or territory?

Elizabeth Ann Howell filed a petition in the county court of Douglas County asking that she be appointed guardian of the person and property of her mother, Helen Howland Fletcher, a resident of Cook County, Illinois. Most of the property of which it is alleged she is the owner is located in Douglas County. As the basis for her appointment she attached to her petition a duly certified and authenticated transcript of the records of the probate court of Cook County, Illinois, showing her appointment and qualification as conservator of the estate of her mother. Helen Howland Fletcher appeared specially and objected to the jurisdiction of the county court of Douglas County of her person because no notice or summons of any kind had ever been served on her as required by the laws of the State of Nebraska. The county court sustained this special appearance and dismissed the petition, apparently on the basis that Illinois does not have a law substantially similar to our section 38-801, R. R. S. 1943.

Elizabeth Ann Howell appealed from this ruling to the district court for Douglas County. Therein Helen Howland Fletcher again appeared specially and objected to that court's jurisdiction over her on the ground that no notice or summons of any kind had ever been served

on her as required by the laws of the State of Nebraska. The district court overruled her special appearance and this appeal is from that ruling.

Primarily involved in this appeal is the question of whether or not the laws of Illinois on this subject are substantially similar to those of Nebraska, as evidenced by section 38-801, R. R. S. 1943. It was stipulated that: "* * * the issue presented to the Court was solely on the question of whether the statutes are similar; * * *." This section of our statutes does not require a notice or summons to be served on a nonresident ward when the parties otherwise bring themselves within the provisions thereof but does provide it shall only be available "to any resident of any state or territory in which a law substantially similar to this section" shall be in force.

"The basic rule of statutory construction is to ascertain and give effect to the intention of the legislature as expressed in the statute." Megan v. Boyd County, 133 Neb. 539, 276 N. W. 160. In construing a statute the legislative intent may be gathered from the reason for its enactment. Kearney County v. Hapeman, 102 Neb. 550, 167 N. W. 792; Anstine v. State, 137 Neb. 148, 288 N. W. 525.

"Guardianship depends for its validity and legal effect on the law of the jurisdiction by which it was created, and the guardian's authority does not extend beyond the limits of the state. * * * a guardian appointed by the courts of one state has no authority over the ward's person or property in another state, except so far as allowed by the comity of that state, as expressed through its legislature or its court. Thus, except as authorized by statute or the principle of comity, a guardian appointed in a foreign country, or in another state of the Union, cannot demand the control of the ward's person, maintain a suit as guardian, sell or lease the ward's property, collect debts due to him, or demand his distributive share of an estate." 25 Am. Jur., Guardian and Ward, § 215, p. 135.

There can be no doubt of the fact that the reason for enacting this legislation is fully stated in the above. What then is meant by the use of the language "a law substantially similar" as used in the act?

It was said in Smith v. Mitchell, 185 Tenn. 57, 202 S. W. 2d 979: "Now what is meant by statutes being 'substantially similar'? We think they are substantially similar when they effectuate the same result * * *." In Orr v. Wright (Tex. Civ. App.), 45 S. W. 629, where a like situation was involved, the court held: "It was not contemplated that the benefits of this statute should only apply to the residents of the state, territory, etc., having a statute exactly like ours. It was intended that the benefits of this statute should extend to the residents of any state, territory, district, or country in which a remedy was provided by the laws of such state, territory, district, or country for the removal of the estate of a nonresident ward of such state, etc., corresponding in its essential particulars to the provisions of our statute relating to nonresident guardians and wards."

The procedure that a nonresident guardian of a nonresident ward must follow in Illinois and Nebraska are not alike. See, Illinois Probate Act, Laws 1939, § 262, p. 63, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 416, p. 910; Illinois Probate Act, Laws 1939, § 264, p. 64, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 418, p. 913; Illinois Probate Act, Laws 1939, § 265, p. 64, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 419, p. 914; Illinois Probate Act, Laws 1939, § 266, p. 64, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 420, p. 916; Illinois Probate Act, Laws 1939, § 268, p. 65, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 422, p. 918; Illinois Probate Act, Laws 1939, § 269, p. 65, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 423, p. 918; § 38-801, R. R. S. 1943, of Nebraska. But we do not think the phrase "substantially similar," as found in our act, refers to procedure. We think it refers to the substance of the remedy thereby afforded;

that is, permitting a marshalling or collecting of the ward's assets, wherever located, without the necessity of having to commence and maintain independent guardianships in each state or territory where assets of the ward may be located, often at considerable expense, inconvenience, and difficulty. In this respect the laws of Illinois seem to be more liberal than our own. We find the laws of Illinois enacted for this purpose to be "substantially similar" to our own; that is, having a general likeness in purpose.

Appellant further contends the service had in the proceedings in Illinois did not constitute due process under either the Constitution of the State of Nebraska or the Constitution of the United States. See, Art. I, § 3, Constitution of the State of Nebraska; Fourteenth Amendment, § 1, Constitution of the United States.

Article IV, section 1, of the Constitution of the United States provides: "Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State."

However, as stated in Repp v. Repp, 156 Neb. 45, 54 N. W. 2d 238: "It is fundamental, we think, that a judgment of a sister state which does not meet the fundamental requirements of due process as required by section 1 of the Fourteenth Amendment to the Constitution of the United States has no validity in any state, even as a matter of comity."

"The rule in such cases is that when a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is open to inquiry. The party attacking the validity of the judgment has the burden of establishing its invalidity." Repp v. Repp, *supra*. See, also, Darling & Co. v. Burchard, 69 N. D. 212, 284 N. W. 856; Old Wayne Life Assn. v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; Olson v. Mackolite Fire Proofing Co., 116 Ill. App. 573.

No attempt was made to prove want of jurisdiction

of the parties by extrinsic evidence. Therefore the question presented for determination is whether or not the transcript of the record of the probate court of Cook County, Illinois, shows a want of jurisdiction over the person of Helen Howland Fletcher.

The certified and authenticated record of the probate court of Cook County, Illinois, shows appellee filed her petition therein on September 12, 1951, asking that she be appointed conservator of the estate and of the person of appellant, whom she alleged was incapable of managing her estate because of physical incapacity. In this respect the laws of Illinois provide: "Probate courts and county courts of counties in which there are no probate courts have the power to appoint conservators as follows: * * * (c) Upon the filing of a verified petition by a reputable citizen of this state the proper court may adjudge a person as incompetent pursuant to this Act and appoint a conservator for him. The court may require such notice of the hearing on the petition as it deems expedient." Illinois Probate Act, Laws 1939, § 113, p. 33, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 265, p. 571.

On May 16, 1951, appellee filed an affidavit in the proceedings which she had instituted in the probate court of Cook County wherein she stated: "That said Helen Howland Fletcher's physical condition is impaired as the result of cerebral hemorrhage and a hypertensive encephalopathy; that she is under continuous medical care and has been attended by a companion or nurse for the past three years; that if summons is personally served on her the probable result will be to further seriously impair her condition."

This was done pursuant to the Illinois Probate Act, Laws 1939, § 117, p. 34, appearing in Smith-Hurd Illinois Ann. St., ch. 3, § 269, p. 580, which provides: "On the filing of a petition for the adjudication of incompetency and appointment of a conservator pursuant to Section 113 (c) of this Act, the court shall set the cause for

hearing, and summons directed to the alleged incompetent shall be issued. * * * Upon good cause shown supported by affidavit, the court may excuse service on him personally and substitute therefor any of the modes of service provided for in other civil cases."

The probate court of Cook County thereupon entered the following order: "IT IS HEREBY ORDERED that in accordance with the provisions contained in Section 117 of the Illinois Probate Act personal service on the alleged incompetent be and it is hereby excused and that any of the modes of service provided for in other civil cases be substituted therefor."

The following service was thereupon had upon appellant: "I certify that I served the within writ on the defendant HELEN HOWLAND FLETCHER by leaving a copy of the same at her usual place of abode in my county, with DELIA LUOMA (nurse) a person of her family of the age of ten years or upwards and informing such person of the contents thereof, on the 17th day of May, 1951, and also by sending through the United States Post Office, on the 17th day of May, 1951, a copy of the within writ in a sealed envelope, with postage fully prepaid addressed to the said defendant at such usual place of abode."

This was in accordance with the following statute: "Except as otherwise expressly provided herein, service of summons upon an individual defendant in any civil action shall be made * * * by leaving such copy at his usual place of abode, with some person of the family, of the age of ten years or upwards, and informing such person of the contents thereof, provided that the officer making such service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at such usual place of abode; the certificate of such officer that he has sent such copy in pursuance of this section shall be evidence that he has done so." Illinois Civil Practice Act, Laws 1933, § 13,

p. 788, appearing in Smith-Hurd Ann. St., ch. 110, § 137, p. 46.

On May 22, 1951, the probate court entered the following order: "It is therefore ORDERED that Elizabeth Ann Howell be and she hereby is appointed conservator of the estate (and person) of Helen Howland Fletcher, an incompetent, * * *."

"The most common method of service of process upon a person domiciled within the state, provided for by statute, is by leaving the summons at the last and usual place of abode of the defendant. The courts have upheld this method of acquiring jurisdiction. Any other method of service upon a person domiciled within the state is sufficient to give the courts jurisdiction over him, if it is one reasonably calculated under all the circumstances to give him notice of the action and an opportunity to be heard. An action will lie in other states upon the judgment. If, however, the method of service pursued is one which does not have a reasonable tendency to give the defendant notice of the action, the rendition of a judgment against him by the courts of any state of the United States is void, as a violation of the Fourteenth Amendment to the Constitution of the United States, since it deprives the defendant of property without due process of law. If such a judgment is rendered, no other state need give it faith or credit." 1 Beale, Conflict of Laws, § 75.1, p. 333.

"The adequacy of substituted service so far as due process is concerned is dependent upon whether or not the form of substituted service is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." Repp v. Repp, *supra*.

Proof of mailing a notice is prima facie proof that it was received. Meyer v. Krohn, 114 Ill. 574, 2 N. E. 495.

We think the form of substituted service provided by the statutes of Illinois is, on its face, sufficient so it can be said it would reasonably be calculated to give appellant actual notice of the proceedings that had been in-

stituted against her and to give her an opportunity, if she so desired, to be heard. It may be, as appellant contends, that if evidence of all the facts and circumstances were adduced that it would disclose that what was done did not have that effect, but that question is not here. It can only be adjudicated if and when such evidence is presented in the county court of Douglas County in this proceeding.

We find the order of the district court to be correct and therefore affirm its action with direction that the cause be returned by it to the county court for further proceedings in accordance herewith.

AFFIRMED.